No. 13-4514

IN THE

# United States Court of Appeals
# For the Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

RICARDO O. CURRY, II,

*Defendant-Appellant.*

**On Appeal from the United States District Court
for the District of Maryland**

## OPENING BRIEF OF DEFENDANT-APPELLANT
## RICARDO O. CURRY, II

Lee Ann Anderson McCall
(CJA Counsel)
Amanda F. Davidoff
Elizabeth A. Cassady
Jared P. Roscoe
James H. Congdon
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Ave., N.W.
Suite 800
Washington, D.C. 20006
Tel: (202) 956-7500
*Counsel for Defendant-Appellant*

## TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ...................................................................1

STATEMENT OF THE ISSUES ......................................................................1

STATEMENT OF THE CASE ........................................................................1

      A.     The Competency and *Faretta* Proceedings ................................3

      B.     The Trial ........................................................................................7

SUMMARY OF ARGUMENT......................................................................12

ARGUMENT ................................................................................................15

I.    MR. CURRY'S WAIVER OF COUNSEL WAS NOT "KNOWING AND INTELLIGENT" OR "CLEAR AND UNEQUIVOCAL."..................................15

      A.     It Was Evident Prior to Trial That Mr. Curry's Waiver Was Not "Knowing and Intelligent."..................................................17

      B.     Subsequent Proceedings Demonstrated That Mr. Curry Did Not Knowingly and Intelligently Waive the Right to Counsel....................................24

      C.     Mr. Curry's Waiver Was Not "Clear and Unequivocal." .....................................28

II.   THE FAILURE TO APPOINT COUNSEL FOR MR. CURRY RESULTED IN A VIOLATION OF DUE PROCESS. .....................................30

III.  THIS COURT SHOULD HEAR ORAL ARGUMENT. ..................................33

CONCLUSION ............................................................................................33

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams* v. *United States ex rel. McCann*,
317 U.S. 269 (1942) .................................................................................19

*Am. Canoe Ass'n* v. *Murphy Farms, Inc.*,
326 F.3d 514 (4th Cir. 2003) ...................................................................24

*Betts* v. *Brady*,
316 U.S. 455 (1942) .................................................................................31

*Brewer* v. *Williams*,
430 U.S. 387 (1977) .................................................................................16

*Chambers* v. *Mississippi*,
410 U.S. 284 (1973) .................................................................................33

*Crane* v. *Kentucky*,
476 U.S. 683 (2009) .................................................................................31

*Faretta* v. *California*,
422 U.S. 806 (1975) ........................................................................ *passim*

*Fields* v. *Murray*,
49 F.3d 1024 (4th Cir. 1995) ...................................................................16

*Fitzpatrick* v. *Wainwright*,
800 F.2d 1057 (11th Cir. 1986) ..........................................................18, 23

*Godinez* v. *Moran*,
509 U.S. 389 (1993) .......................................................................12, 17, 18

*Griffin* v. *Aiken*,
775 F.2d 1226 (4th Cir. 1985) .................................................................12

*Indiana* v. *Edwards*,
554 U.S. 164 (2008) .................................................................................15

*Jones* v. *Barnes*,
463 U.S. 745 (1983) .................................................................................27

*McKaskle* v. *Wiggins*,
465 U.S. 168 (1984) .................................................................................18

*Morrissey* v. *Brewer,*
    408 U.S. 471 (1972)..................................................................................31

*Penson* v. *Ohio,*
    488 U.S. 75 (1988)..............................................................................15, 16

*Rana* v. *United States,*
    812 F.2d 887 (4th Cir. 1987) ..............................................................33

*Rubin* v. *Gee,*
    292 F.3d 396 (4th Cir. 2002) ..............................................................31

*Sciolino* v. *City of Newport News,*
    480 F.3d 642 (4th Cir. 2007) ..............................................................31

*Strickland* v. *Washington,*
    466 U.S. 668 (1984)........................................................................15, 31

*Tuitt* v. *Fair,*
    822 F.2d 166 (1st Cir. 1987) ..............................................................16

*United States* v. *Banks,*
    482 F.3d 733 (4th Cir. 2007) ..............................................................28

*United States* v. *Bernard,*
    708 F.3d 583 (4th Cir. 2013) ........................................................15, 25

*United States* v. *Brunson,*
    482 Fed. Appx. 811 (4th Cir. 2012)....................................13, 19, 20, 28

*United States* v. *Bush,*
    404 F.3d 263 (4th Cir. 2005) ......................................................*passim*

*United States* v. *Chapman,*
    593 F.3d 365 (4th Cir. 2010) ..............................................................27

*United States* v. *Curcio,*
    680 F.2d 881 (2d Cir. 1982)................................................................23

*United States* v. *Curry,*
    Crim. No. WDQ-12-0163, 2013 U.S. Dist. LEXIS 39398 (D. Md. March 15, 2013).........9, 32

*United States* v. *Davis,*
    No. 12-4751, 2013 WL 5345544 (4th Cir. Sept. 25, 2013) ....................................16

*United States* v. *Frazier-El,*
    204 F.3d 553 (4th Cir. 2000) ......................................................*passim*

*United States* v. *Gillings*,
  568 F.2d 1307 (9th Cir. 1978) ...................................................................14, 23

*United States* v. *Gillis*,
  773 F.2d 549 (4th Cir. 1985) ..............................................................................24

*United States* v. *Hall*,
  Criminal Action Nos. 6:13-cr-00170-1-JMC, 6:13-cr-00170-2-JMC, 2013 WL
  5707346 (D. S.C. October 17, 2013) ...................................................................20

*United States* v. *Mosley*,
  607 F.3d 555 (8th. Cir. 2010) ...............................................................13, 20, 28

*United States* v. *Olano*,
  507 U.S. 725 (1993)..............................................................................................25

*United States* v. *Richardson*,
  195 F.3d 192 (4th Cir. 1999) ..............................................................................25

*United States* v. *Singleton*,
  107 F.3d 1091 (4th Cir. 1997) ....................................................................... *passim*

*United States* v. *Smith*,
  No. 05 Cr. 922, 2007 WL 1002139 (S.D.N.Y. Apr. 4, 2007)................................24

*United States* v. *Thomas*,
  391 Fed. Appx. 321 (4th Cir. 2010)......................................................................30

*United States* v. *Wagner*,
  382 F.3d 598 (6th Cir. 2004) ..............................................................................32

*United States* v. *Wiggins*,
  492 Fed. Appx. 414 (4th Cir. 2012)...............................................................15, 18

*United States* v. *Wiggins*, Crim. No. WDQ-09-0287, 2011 WL 806383, (D. Md. March 1,
  2011) ....................................................................................................................18

*Upjohn* v. *United States*,
  449 U.S. 383 (1981)..............................................................................................33

**Statutes, Rules, and Regulations**

18 U.S.C. § 157(2) (2010) .........................................................................................32

18 U.S.C. § 3231........................................................................................................1

28 U.S.C. § 1291........................................................................................................1

Federal Rules of Evidence 602 and 802 ...................................................................21

**Other Authorities**

U.S Const. amend. V.........................................................................................................15, 30, 31

U.S. Const. amend. VI.................................................................................................................13

Walter V. Schaefer, *Federalism and State Criminal Procedure*, 70 Harv. L. Rev. 1,
    (1956).................................................................................................................................15

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this action pursuant to 18 U.S.C. § 3231.  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.  The notice of appeal was timely filed within ten days of entry of judgment and sentencing.

## STATEMENT OF THE ISSUES

1.      Whether the district court erred in finding that Mr. Curry made a "knowing and intelligent" and "clear and unequivocal" waiver of his right to counsel, where Mr. Curry waived counsel because he did not understand that the criminal proceedings applied to him and believed that the court lacked jurisdiction over him.

2.      Whether the proceedings against Mr. Curry denied him his constitutional right to due process.

## STATEMENT OF THE CASE

On March 27, 2012, Ricardo O. Curry, II, was indicted by a grand jury and charged with three counts of filing false tax returns.  (JA 14-19.)  At an initial appearance hearing before Magistrate Judge Susan Gauvey on March 29, 2012, Mr. Curry objected to the court and Government's jurisdiction over him, stating that he did not "think the IRS and/or the Government has the right or any jurisdiction to acquire this."  (JA 41.)  He also objected to his name being spelled in "all caps" on the Indictment.  (JA 40-41.)  The Government raised the concern

that Mr. Curry "was not recognizing the authority of the United States or of this Court." (JA 43.)   After the hearing, on April 17, Mr. Curry filed an "Information Request" asking for, among other things, "charters" for: (i) the United States District Court for the District of Maryland; (ii) Susan K. Gauvey, Magistrate Judge; (iii) William D. Quarles, district court judge; and (iv) the I.R.S, (JA 50-52), and a Motion to Quash the Indictment, in which he referred to the United States as a "Ficticous [sic] Plaintiff" and claimed that the "Fictitious plaintiff has not ability and/or capacity to enter an action and/or claim against the alleged defendant," (JA 53-54).

Mr. Curry was arraigned before the magistrate judge on April 27, 2012, and stated that he did not intend to retain a lawyer.  (JA 59.)  As he had at the initial hearing, Mr. Curry objected to the proceedings, asserting that the Assistant U.S. Attorney had "no right to speak" based on "United States Code 602 and 802." (JA 58.)  When asked if he understood the charges against him, Mr. Curry responded, "I understand but I do not concur" and attempted to enter a plea of "non-assumptive." (JA 69-70.)  After the magistrate judge entered a plea of not guilty on Mr. Curry's behalf, the Assistant U.S. Attorney stated that "it's obviously going to be the Government's position that Mr. Curry is not competent to represent himself.  We can't have things like this where he won't speak to anyone.  It just simply won't work." (JA 78-79.)  The magistrate judge remarked that "with your

lack of legal knowledge and your persistence on certain issues . . . it may not be possible to represent yourself." (JA 79-80.) Without deciding that question, on May 15, 2012, the magistrate judge appointed standby counsel for Mr. Curry. (JA 91-92.)

The grand jury issued a Superseding Indictment on December 11, 2012, charging Mr. Curry with aiding the preparation of false tax returns, bankruptcy fraud, and perjury. (JA 20-34.) At the initial hearing on the Superseding Indictment, Mr. Curry reiterated that he "[did] not understand" how the court's jurisdiction applied to him:

> Your Honor, I am confused, I do not understand. I am the living beneficiary of the estate being administered here today. And I come here in peace. I am not the executor or the trustee. The Court is the, you know, administrator and trustee of the estate. So, I'm not sure how this jurisdiction applies to me.

(JA 142.) Because Mr. Curry refused to enter a plea, the court entered a not-guilty plea for him. (JA 146.)

### A.     The Competency and *Faretta* Proceedings

On May 11, 2012, the Government moved the court to order a psychiatric evaluation for Mr. Curry, highlighting that at his initial appearance and arraignment, he "questioned the authority of the Court in a disruptive manner, and refused to answer the most basic questions or enter a plea." (JA 82-83.) Mr. Curry opposed the Government's motion on numerous grounds, arguing, among other

things, that the Assistant U.S. Attorney "[wa]s the Proximate cause of the damages alleged herein," that the Government attorneys "in this case, as in all cases, . . . are avoiding Administrative Procedures Acts of Congress to get unlawful and fraudulent convictions of the American people," and demanding that "the Plaintiff also take a Psychiatric Evaluation, since His/Her Complaint is fatally flawed." (JA 98-103.) On reply, the Government stated its view that previous assertions made by Mr. Curry "clearly indicate, taken at face value, that the Defendant does not understand that he is in United States District Court, facing a criminal proceeding." (JA 119.) The magistrate judge granted the Government's motion on July 19, 2012, ordering a psychiatric examination of Mr. Curry. (JA 125.)

The district judge presided over the remaining proceedings against Mr. Curry.







**B.    The Trial**

Three days before trial, on March 15, 2013, Mr. Curry attempted to

file a "Notice of Trespass" and "Injunctive Decree" from the "Chair of St. Peter via

the Office of the Keeper of the Extraordinary Seal of Saint Peter," which instructed

the district court and Government to cease and desist "all actions against the ESTATES" or to present any claims to "the Office of the Chair of Saint Peter." (JA 183-85.)  The district court struck the filing from the record "[t]o protect the proceedings and judgment of the Court."  (JA 267.)

A three-day trial was held from March 18 to 20, 2013. ██████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████  In his opening remarks, Mr. Curry stated only that he was "the living beneficiary for the Ricardo Otto Curry estate in trust," that "[t]he trustee ha[d] not been established," and that he was "here in peace," asking that "questions be directed to the trustee." (JA 200.)

During the course of the ensuing three-day trial, Mr. Curry did not cross-examine any prosecution witnesses, make any objections, or call any witnesses.  Indeed, when the government sought to present testimony that overlapped with prior testimony, the district court interrupted to ask if there was "some adversary here that I'm not seeing."  The court counseled that "[o]ne of the nice things about not having an active opponent is that you don't have to put on the

same case as you would if you had an active opponent," noting that the

Government had been able to present "all sorts of stuff that you would not, in a

contested hearing, get in."  (JA 279.)

Before trial, the court had determined that some testimony from Mr.

Curry's attorneys would be permitted pursuant to various exceptions to the

attorney-client privilege, but that "legal advice to Curry" was privileged, not

subject to an exception, and would not be admitted if Mr. Curry asserted the

privilege.  *United States* v. *Curry*, Crim. No. WDQ-12-0163, 2013 U.S. Dist.

LEXIS 39398, at *17-18 (D. Md. March 15, 2013).  On the first day of trial, when

the district court asked Mr. Curry whether he would assert the privilege over his

lawyers' advice, he responded "I do not understand.  I am the living beneficiary.

Please consult the trustee."  (JA 218.)  Based on this statement, the Judge noted

that it "[s]ounds like he's not asserting the privilege" and allowed the questioning

of the witness to proceed.  (*Id*.)  Before receiving testimony from another of Mr.

Curry's bankruptcy attorneys, the district court asked whether there "was any

indication [that] Mr. Curry has changed his mind on the privilege."  (JA 280.)  Mr.

Curry's standby counsel shook his head no, and the questioning went forward.

(*Id*.)

These two witnesses gave previously privileged testimony about legal

advice given to Mr. Curry.  In particular, one of Mr. Curry's bankruptcy attorneys

testified that he advises all clients that "failing to disclose all information that we need in order to accurately report information to the Court . . . ultimately could result in criminal prosecution." (JA 219.) Mr. Curry's other attorney testified that, before a bankruptcy hearing, he advised his client that due to a failure to disclose certain assets, Mr. Curry was facing "potential dismissal of his bankruptcy, a denial of his discharge, . . . as well as what criminal penalties may apply." (JA 283.) The attorney testified that, after the hearing, he told Mr. Curry that his undisclosed assets "are assets, we had to turn these over, we need the documentation for these promissory notes now, we need to turn those over to the Chapter 7 trustee, and then we had to also disclose them on his Schedule B of personal property as assets." (JA 287-88.)

On the third day of trial, the district court read through a list of proposed jury instructions, asking counsel after each instruction if there were any objections. Mr. Curry gave the same response to each of the 59 instructions: "I do not understand. I'm the living beneficiary." (JA 318-31.) The court joked with the court reporter that "I assume you have a macro," which is a "shortcut" command to insert the same text repeatedly. (JA 319.) Mr. Curry also refused an instruction to the jury not to take into account his choice not to testify, giving the same response he had to other questions throughout the proceedings: "I do not understand that. I'm a living beneficiary." (JA 312.)

-10-

Mr. Curry's closing statement consisted of two sentences in which he again asserted that he was the "beneficiary" of an "estate":

> As beneficiary of the estate and creditor of the instant matter before us here today, I accept the facts without dispute, and instruct the trustee and prosecutor to pay the clerk to settle and close the matter, returning the estate to honor. I do not consent to the liabilities in this matter.

(JA 335.) On March 21, 2013, the jury returned a verdict of guilty on all counts. (JA 346-48.)

At the sentencing hearing, after Mr. Curry refused to read his Presentence Report, the district court determined that he was "not challenging it." (JA 351.) When asked to make a statement, Mr. Curry questioned how the proceedings could have gone forward "without the trustee present" and read a letter from himself to "the trustee." (JA 354.) Mr. Curry was sentenced to imprisonment for a term of 87 months, supervised release for three years, and restitution in the amount of over $1 million. (JA 360-61.) Over Mr. Curry's

objection, the district court ordered standby counsel to file a notice of appeal, and this appeal followed.[1]  (JA 361.)

## SUMMARY OF ARGUMENT

The right to self-representation is not absolute.  *United States*. v. *Frazier-El*, 204 F.3d 553, 559 (4th Cir. 2000).  A defendant can waive his right to counsel only if the court finds the waiver to be (i) knowing, intelligent, and voluntary, (ii) clear and unequivocal, and (iii) timely.  *Id.* at 558.  For a waiver to be knowing and intelligent, the court must "determine whether the defendant actually *does* understand the significance and consequences of a particular decision."  *Godinez* v. *Moran*, 509 U.S. 389, 401 n.12 (1993).  In determining the sufficiency of a waiver, the court must consider the record "as a whole."  *United States* v. *Singleton*, 107 F.3d 1091, 1097 (4th Cir. 1997).  These requirements exist, in part, because "representation by counsel does not merely tend to ensure

---

[1]    Mr. Curry has conveyed to counsel his belief that, by assisting or participating in the arguments raised in this brief, he may submit himself to the jurisdiction of the federal courts, which he contests and believes is improper due to his status as the "living beneficiary."  Counsel therefore notes to the Court, as agreed with Mr. Curry, that this brief is submitted solely by counsel, using our best judgment as to proper grounds for appeal to this Court.  *See Griffin* v. *Aiken*, 775 F.2d 1226, 1235 (4th Cir. 1985) (finding that appellate counsel properly determines which issues to raise on appeal when it makes "an informed decision based on reasonable professional judgment").  Mr. Curry may file a supplemental brief (and a motion seeking leave to file such a brief), which he has indicated will be filed not *pro se* (which he believes is a process that will cause him to lose his status and standing as a living beneficiary and become subject to the jurisdiction of the court), but instead will be submitted "*in propria persona, sui juris*."

justice for the individual criminal defendant, it marks the process as fair and

legitimate, sustaining public confidence in the system and in the rule of law." *Id.*at

1102.  In some instances, the Government's interest in ensuring the integrity and

efficiency of the trial outweighs the defendant's interest in acting as his own

lawyer.  *United States* v. *Bush*, 404 F.3d 263, 271-72 (4th Cir. 2005).

      First, the district court erred in finding that Mr. Curry made a

"knowing and intelligent" and "clear and unequivocal" waiver of his Sixth

Amendment right to counsel under *Faretta* v. *California*, 422 U.S. 806 (1975).  At

the time of the waiver and throughout the subsequent trial, Mr. Curry demonstrated

through his motions, actions and responses that he did not believe the district court

had jurisdiction over him and did not understand that he faced criminal charges

that would, if uncontested, result in the loss of his liberty. ██████████████

████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████  In similar circumstances, courts have

refused to allow criminal defendants to proceed without the assistance of counsel,

*see United States* v. *Mosley*, 607 F.3d 555 (8th. Cir. 2010); *United States* v.

*Brunson*, 482 Fed. Appx. 811 (4th Cir. 2012) (unpublished) (per curiam), or have

reversed convictions that resulted from *pro se* trials, *see United States* v. *Gillings*,

568 F.2d 1307, 1309 (9th Cir. 1978), on the basis that the defendant's waiver of

counsel was not knowing and intelligent.  Mr. Curry's behavior at trial, including his failure to present any defense at all or to make any substantive statements other than that the proceedings did not apply to him, *see e.g.*, (SJA 422, SJA 430, JA 191, JA 200, JA 204, JA 335), made it even more clear that he did not knowingly waive his right to counsel and instead was confused about the proceedings.  The court's failure to reverse course and appoint counsel was further error.

If the Court were to conclude that Mr. Curry knowingly waived his right to counsel in order to argue that the district court lacked jurisdiction over him—a conclusion that is not supported by the record, because Mr. Curry presented no defense at all—Mr. Curry's waiver was not "clear and unequivocal." *See Frazier-El*, 204 F.3d at 558.  This Court has held that efforts to waive counsel in order to present a frivolous defense are manipulative, and for that reason, do not satisfy the "clear and unequivocal" standard.  *Id*. at 560.

Second, the district court's improper decision to allow Mr. Curry to waive his right to counsel and proceed *pro se* ultimately resulted in a trial so one-sided that it violated Mr. Curry's constitutional right to due process.  The district court remarked that the Government faced no "adversary" and had been permitted to present "all sorts of stuff that you would not, in a contested hearing, get in." (JA 279.)  This included privileged testimony from Mr. Curry's own lawyers that addressed the scienter element of the bankruptcy charges against him.

-14-

(JA 219, JA 283.)  The Due Process Clause of the Fifth Amendment guarantees criminal defendants a fair trial, *Strickland* v. *Washington*, 466 U.S. 668, 684-85 (1984), and the district court's decision to permit Mr. Curry to proceed *pro se* denied him that right. [2]

## ARGUMENT

### I.  MR. CURRY'S WAIVER OF COUNSEL WAS NOT "KNOWING AND INTELLIGENT" OR "CLEAR AND UNEQUIVOCAL."

The right to counsel is "a fundamental procedural right of persons accused of crimes." *Singleton*, 107 F.3d at 1095.  "[O]f all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive, for it affects his ability to assert any other rights he may have." *Penson* v. *Ohio*, 488 U.S. 75, 84 (1988) (quoting Walter V. Schaefer, *Federalism and State Criminal Procedure*, 70 Harv. L. Rev. 1, 8 (1956)).  As between the right to counsel and the right to self-representation, "[w]here the two rights are in collision,

---

[2]


the nature of the two rights makes it reasonable to favor the right to counsel which, if denied, leaves the average defendant helpless." *Singleton*, 107 F.3d at 1096 (quoting *Tuitt* v. *Fair*, 822 F.2d 166, 174 (1st Cir. 1987)). Indeed, as this Court has recognized, "[s]o important is the right to counsel that the Supreme Court has instructed courts to 'indulge in every reasonable presumption against [its] waiver.'" *Fields* v. *Murray*, 49 F.3d 1024, 1029 (4th Cir. 1995) (en banc) (quoting *Brewer* v. *Williams*, 430 U.S. 387, 404 (1977)). Because the right to counsel is fundamental and "affects [a defendant's] ability to assert any other rights he may have," *Penson*, 488 U.S. at 84, a court can permit a defendant to waive his right to counsel only if the court finds the waiver to be (i) knowing, intelligent, and voluntary, (ii) clear and unequivocal, and (iii) timely. *Frazier-El*, 204 F.3d at 558.

The effectiveness of a waiver of the right to counsel is a question of law reviewed *de novo* by the Fourth Circuit. *Singleton*, 107 F.3d at n.3; *see also United States* v. *Davis,* No. 12-4751, 2013 WL 5345544, at *3, (4th Cir. Sept. 25, 2013) (unpublished) ("We review a district court's determination that a defendant has waived his right to counsel *de novo*"). The court reviews any findings of fact underlying the district court's determination for clear error, *see United States* v. *Bush*, 404 F.3d 263, 270 (4th Cir. 2005), but because the district court did not state the basis for its finding that Mr. Curry's waiver of counsel was knowing and intelligent and did not make any findings of fact relating to the waiver, the district

-16-

court's decision permitting Mr. Curry to waive his right to counsel should be reviewed *de novo*. *See Singleton*, 107 F.3d at 1097 n.3. The Court should "review the sufficiency of a waiver of the right to counsel by evaluating the complete profile of the defendant and the circumstances of his decision as known to the trial court at the time, by examining the record as a whole." *Bush*, 404 F.3d at 270 (internal quotation marks omitted).

### A.    It Was Evident Prior to Trial That Mr. Curry's Waiver Was Not "Knowing and Intelligent."

In addition to determining that a defendant who seeks to waive counsel is competent, a trial court must satisfy itself that the waiver of his constitutional right to counsel is knowing and intelligent. *Godinez,* 509 U.S. at 400-01; *see also Frazier-El*, 204 F.3d at 558. The competency test measures whether the defendant is *able* to understand the significance and consequences of a decision; the purpose of the inquiry into the adequacy of a defendant's waiver "is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision." *Godinez*, 509 U.S. at 401 n.12. Accordingly, the waiver test represents a "heightened standard for . . . waiving the right to counsel" above and beyond the competency test. *Id.* at 400-01. Under that standard, the court should inquire into "the defendant's background capabilities and understanding of the dangers and disadvantages of self-representation," *see*

*Singleton*, 107 F.3d at 1098, and "determine whether he understands courtroom procedures and proceedings," *United States* v. *Wiggins*, Crim. No. WDQ-09-0287, 2011 WL 806383, at *8 (D. Md. March 1, 2011) (unpublished); *see also McKaskle* v. *Wiggins*, 465 U.S. 168, 174 (1984) (defendant must be "able and willing to abide by rules of procedure and courtroom protocol"). This is done to "insure that the defendant understands the disadvantages of self-representation, including, *inter alia*, the defendant's understanding of the risks and complexities of his particular case," because "[t]he ultimate test [of whether a waiver was knowing, intelligent and voluntary] is not the trial court's express advice, but rather the defendant's understanding." *Fitzpatrick* v. *Wainwright*, 800 F.2d 1057, 1065 (11th Cir. 1986).

There is no "precise procedure or litany" that a court must follow to determine whether a defendant's waiver of his right to counsel is "knowing and intelligent." *Singleton*, 107 F.3d at 1097. Instead, the Court must determine the sufficiency of the waiver "from the record as a whole." *Id.* Thus, in *Singleton*, although there was no "direct evidence of Singleton's educational background, his understanding of the judicial process, and his appreciation of the charges against him and the potential penalties," the defendant's waiver was knowing and intelligent because the record as a whole showed that he "had the requisite appreciation of those factors to make an intelligent choice to proceed pro se." *Id.* at 1098-99. That record showed that the district court had "ample opportunity" to

-18-

observe Singleton's "active intelligence," and that the court found Singleton's presentation of his defense to be "respectable." *Id.* at 1098; *see also Faretta*, 422 U.S. at 835 (defendant waiving counsel must be "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open'") (quoting *Adams* v. *United States ex rel. McCann*, 317 U.S. 269, 279 (1942)).

Conversely, where the record as a whole demonstrates that a defendant's waiver was not knowing and intelligent, trial courts appoint counsel for criminal defendants seeking to proceed *pro se*. For example, in *United States* v. *Brunson*, 482 Fed. Appx. 811 (4th Cir. 2012) (unpublished) (per curiam), the defendants sought to represent themselves but refused to participate in the necessary pretrial proceedings, instead asserting that the district court lacked jurisdiction over them, and that they were not the defendants named in the indictment. *Id.* at 818. Affirming the district court's decision to appoint counsel, this Court concluded that in those circumstances, "it was impossible for the district court to conduct any type of meaningful dialogue with the Appellants, and, without such dialogue, it was impossible for the district court to try the case." *Id.*; *see also United States* v. *Hall,* Criminal Action Nos. 6:13-cr-00170-1-JMC, 6:13-cr-00170-2-JMC, 2013 WL 5707346, at *4 (D. S.C. October 17, 2013) (finding defendant's waiver of counsel was not knowing, intelligent and voluntary due to his "absurd

-19-

responses to basic questions" during the *Faretta* colloquy).  Similarly, in *United States* v. *Mosley*, 607 F.3d 555, 557 (8th. Cir. 2010), the defendant's assertions that he was a "living, flesh and blood breathing man" and a "sovereign," and that he did not understand why he was detained "if no one has a claim against me" indicated to the magistrate judge that "either [Mosley] did not understand these proceedings or he was not willing to participate in them."  *Id.* at 559.  On this record, the Eighth Circuit affirmed the trial court's refusal to permit Mosley to proceed *pro se*.  *Id.*

Based on the record before it, the district court should have found at the *Faretta* hearing that Mr. Curry's waiver of counsel was not knowing or intelligent.   Mr. Curry's behavior demonstrated that, like the defendants in *Brunson* and *Mosley*, he did not understand that the charges applied to him and believed there was no need to defend against them.  ███████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████  His only actions prior to trial related to challenging the jurisdiction of the court.  For example, between March 29, 2012, and April 27, 2012, he sought "charters" for the district court, the judges, and the IRS (JA 50-52), challenged the district court's authority to set conditions of his release, (JA 40-42), asserted that the Assistant U.S. Attorney was not allowed to speak in court

-20-

pursuant based upon Federal Rules of Evidence 602 and 802 (JA 58), and called

the United States a "fictitious plaintiff." (JA 64, JA 79); *see also* (JA 53.)

Mr. Curry also signaled his intent not to participate in the

proceedings, refusing to enter a plea at his arraignment because "I come in peace"

and "I am the divine spirit of the living beneficiary Ricardo Otto Curry, living

estate." (JA 146.) ██████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

██████  In short, Mr. Curry did not grasp the legal proceedings taking place and

believed they did not or should not apply to him.

In response to this pattern of conduct, the Government consistently

took the position that Mr. Curry should not be permitted to represent himself.  At

Mr. Curry's initial arraignment on April 27, 2012, Assistant U.S. Attorney Bockin

stated that "it's obviously going to be the Government's position that Mr. Curry is

not competent to represent himself." (JA 78-79.)  By July 2012, the government

argued that Mr. Curry's conduct "clearly indicate[d] that he d[id] not understand

that his is in a criminal proceeding, or the consequences of that proceeding." (JA

121.) ███████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████ Given the

absence of any factual findings by the judge, the Government's contemporaneous

views concerning the adequacy of Mr. Curry's waiver are instructive.

Despite the Government's concerns and Mr. Curry's failure to

understand or participate meaningfully in the proceedings, the district court did not

ask any questions at the *Faretta* hearing to elicit Mr. Curry's understanding of why

the proceedings did not pertain to him, what Mr. Curry understood them to mean,

or why Mr. Curry wanted to represent himself. ███████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████ This failure to probe Mr. Curry's

purported "comprehension" left the record without any clear indication that Mr.

-22-

Curry in fact understood the proceedings and their application to him. ████ ████████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████████ ████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████ a rote recitation that a defendant is voluntarily waiving his right to counsel will not render his waiver sufficient. Thus in *United States* v. *Gillings*, 568 F.2d 1307 (9th Cir. 1978), *cert. denied*, 436 U.S. 919, the court reversed a defendant's conviction because she gave only "pro forma answers to pro forma questions" at the *Faretta* inquiry, which did not show "that her decision was knowing and intelligent." *Id.* at 1309; *see also Fitzpatrick*, 800 F.2d at 1067 ("in determining the validity of a *Faretta* waiver," courts consider "whether the exchange between the defendant and the court consisted merely of pro forma answers to pro forma questions"); *United States* v. *Curcio*, 680 F.2d 881, 889 (2d Cir. 1982) ("questions designed to elicit from the defendant a narrative statement of his understanding are preferable to questions designed to elicit mere 'yes' or 'no' answers"). On the other hand, in *United States* v. *Smith*, No. 05 Cr. 922, 2007 WL 1002139, at *1 (S.D.N.Y. Apr. 4, 2007), the defendant—

who, like Mr. Curry, believed the district court lacked jurisdiction over him—asked in writing to proceed *pro se*. When the district court was unable to engage the defendant in a "'full and calm discussion'" to determine the adequacy of his waiver, it denied the request. *Id.* The same result should have occurred here. It is and was clear from the record, and should have been clear to the district court, that Mr. Curry's waiver of counsel was not knowing and intelligent.

### B.    Subsequent Proceedings Demonstrated That Mr. Curry Did Not Knowingly and Intelligently Waive the Right to Counsel.

A district court always "retains the power to reconsider and modify" its pre-judgment rulings, *Am. Canoe Ass'n* v. *Murphy Farms, Inc.*, 326 F.3d 514 (4th Cir. 2003), and should do so regarding a defendant's right to represent himself when the defendant's conduct undermines the validity of the waiver, *see Singleton*, 107 F.3d at 1096 (quoting *United States* v. *Gillis*, 773 F.2d 549, 559 (4th Cir. 1985)) ("[T]he right to self-representation can be waived . . . by subsequent conduct giving the appearance of uncertainty."). The district court's failure to reconsider its finding that Mr. Curry had validly waived his right to counsel as the trial continued was error. The record reflects that no one—including Mr. Curry himself—was representing Mr. Curry's interests. This began at the competency

hearing itself,[3] and the district court should have quickly realized that its ruling on self-representation was in error.[4] Mr. Curry's subsequent behavior and demeanor at trial should have caused the district court to conclude that his waiver was not "knowing and intelligent" but instead was based on Mr. Curry's belief that, as a living beneficiary of the estate, the charges were not proper against him and he should not participate in the criminal proceedings.



) Throughout the subsequent proceedings, he declined to take part because the "trustee" was not

---

[3]    Although ineffective assistance of counsel is not typically an appropriate claim for direct appeal, *see United States* v. *Richardson*, 195 F.3d 192, 198 (4th Cir. 1999), we note that ███████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ███████████████ *Cf. United States* v. *Bernard*, 708 F.3d 583, 588 n.7 (4th Cir. 2013) (describing counsel's active participation in the *Faretta* hearing).

[4]    Although in *U.S.* v. *Bernard*, 708 F.3d 583, 593 (4th Cir. 2013), this Court applied plain error review to a district court's failure, raised for the first time on appeal, to reconsider its decision that the defendant had validly waived his right to counsel, *de novo* review should apply in this case because ████████████████ ████████████████████████████ Even if the plain error standard were to apply, in this case the district court deviated from a legal rule in a way that was "clear" under current law, and this deviation affected the defendant's substantial rights by affecting "the outcome" of the proceedings. *United States* v. *Olano*, 507 U.S. 725, 732-34 (1993).

present.  For example, when asked if he would call any witnesses, Mr. Curry

responded that "I'm not the appropriate authority to answer any questions.  I'm not

the trustee." (JA 191.)  Before the jury was called, Mr. Curry indicated that he was

"just waiting for the trustee to show up." (JA 193.)  When asked if he was ready

for the jury, Mr. Curry responded that he was "not authorized to answer any

questions unless it's addressed to the trustee." (JA 194.)  Mr. Curry's "opening

statement" merely explained that he was "the living beneficiary for the Ricardo

Otto Curry estate in trust," expressed his concern that the "trustee has not been

established today at all," and asked that questions be "directed to the trustee." (JA

200.)  He did not cross-examine any witnesses, call any witnesses, make any

objections, or offer any evidence.  (JA 265, JA 271, JA 272, JA 273, JA 274, JA

291, JA 294-95, JA 296, JA 299-300, JA 301, JA 302, JA 305, JA 308, JA 310.)

Mr. Curry also refused to accept an instruction to the jury not to take into account

his choice not to testify, stating only that he did not understand and was "a living

beneficiary." (JA 312-13.)

The few instances where Mr. Curry did anything during the trial

demonstrated confusion about the proceedings.  ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████ During the second day of trial Mr. Curry inexplicably stood for the Government's examination of a witness.  JA 291-92.)  His closing statement was nonsensical, stating only that he was the "beneficiary of the estate" and the "creditor of the instant matter," instructing the "trustee and prosecutor to pay the clerk" in order to resolve the case.  (JA 335.)

By the end of trial, it apparently was clear to the district court that Mr. Curry was not capable of representing his own interests.  The district court instructed standby counsel to file an appeal over Mr. Curry's objection (JA 361), which it could not have done if it believed that Mr. Curry was capable of making his own decisions about his defense.  *See United States* v. *Chapman*, 593 F.3d 365, 368 (4th Cir. 2010) (noting that one of the "decisions belonging exclusively to the defendant" is whether to "take an appeal" (quoting *Jones* v. *Barnes*, 463 U.S. 745, 751 (1983)).

Based on Mr. Curry's actions at trial, the district court should have re-examined whether his waiver of counsel reflected a sufficient understanding of the proceedings against him to be "knowing and intelligent."   Its failure to do so was reversible error.  A defendant's waiver is not knowing and intelligent if he does not understand that the proceedings apply to him, and that Mr. Curry did not was apparent during his trial.  *See Brunson,* 482 F. App'x at 818 (upholding the district court's denial of defendants' request to proceed *pro se* where "it was

impossible for the district court to conduct any type of meaningful dialogue" with the defendants); *Mosley*, 607 F.3d at 559 (upholding district court's denial of defendant's request to proceed *pro se* where defendant either "did not understand the proceedings or he was not willing to participate in them").

While a defendant may adhere to an "ill-advised, self-defeating legal strategy," *see United States* v. *Banks*, 482 F.3d 733, 743 (4th Cir. 2007), ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ Instead, Mr. Curry presented no defense at all.

## C.    Mr. Curry's Waiver Was Not "Clear and Unequivocal."

In determining whether a waiver of counsel is clear and unequivocal, the court considers whether the defendant "sincere[ly] desire[s] to dispense with the benefits of counsel." *United States* v. *Bush*, 404 F.3d 263, 271 (4th Cir. 2005) (internal quotation omitted).  A court will "deny a request for self-representation when the request is made for the purpose of manipulation because, in such cases, the request will not be clear and unequivocal." *Id.*  If the Court were to find that Mr. Curry's waiver reflected a "knowing and intelligent" decision, it would have to do so on the basis that Mr. Curry understood the proceedings and waived counsel in order to present the defense that the district court lacked jurisdiction over him. In that case, the Court should also conclude that the waiver of counsel was not clear and unequivocal.

A waiver of counsel in order to present a baseless argument is not clear and unequivocal. In *United States* v. *Frazier-El,* the defendant sought to proceed *pro se* in order to argue that as a member of the Moorish Science Temple, he was not subject to the jurisdiction of the court. 204 F.3d at 556-57. The district court denied this request, finding that Frazier-El's argument "would not be permitted by the court." *Id*. at 557-58. This Court upheld the district court's ruling, stating that "[t]he circumstances surrounding [the defendant's] purported waiver of his right to counsel . . . suggests more a manipulation of the system than an unequivocal desire to invoke his right to self-representation." *Id.* at 560.

Here, as in *Frazier-El*, it was clear prior to the *Faretta* hearing that Mr. Curry believed that the district court did not have jurisdiction over him, (*see, e.g.*, JA 102, JA 41-42), and that the United States was a "fictitious plaintiff," (*see e.g.*, JA 93, JA 64, JA 79). ███████████████████████████████

██████████████████████████████████████████ If the waiver were made knowingly, voluntarily and intelligently to present jurisdictional defenses (which it was not; no such defense was presented), the waiver should also have been rejected for failure to satisfy the "clear and unequivocal" standard. *See Frazier-El*, 204 F.3d at 560.

Dr. Lion's report also reflected Mr. Curry's equivocation over whether to be represented by counsel. As described in that report, Mr. Curry ███

-29-

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████ This ambivalence does not reflect a clear and

unequivocal waiver. *See United States* v. *Thomas*, 391 Fed. Appx. 321, 329 (4th

Cir. 2010) (unpublished) (defendant's "vacillation" over representing himself

demonstrated that waiver was not clear and unequivocal.)

## II.    THE FAILURE TO APPOINT COUNSEL FOR MR. CURRY RESULTED IN A VIOLATION OF DUE PROCESS.

The improper decision to allow Mr. Curry to waive his right to

counsel culminated in a trial that denied Mr. Curry his constitutional right to due

process.  The Due Process Clause of the Fifth Amendment guarantees criminal

defendants a fair trial.  *See* U.S. Const. amend. V; *Strickland*, 466 U.S. at 674-75.

Due process is denied when all of the facts and circumstances, considered together,

reveal a proceeding "offensive to the common and fundamental ideas of fairness."

*Betts* v. *Brady*, 316 U.S. 455, 473 (1942), *overruled on other grounds by Gideon* v.

*Wainwright*, 372 U.S. 335 (1963); *see also Morrissey* v. *Brewer*, 408 U.S. 471, 481

(1972) ("[D]ue process is flexible and calls for such procedural protections as the

particular situation demands").  Embedded in the concept of due process is the

right to a meaningful opportunity to be heard.  *See Crane* v. *Kentucky*, 476 U.S.

683, 690 (2009); *see also Sciolino* v. *City of Newport News*, 480 F.3d 642, 653 (4th

Cir. 2007) (stating that a "meaningful opportunity to be heard" is "a right that due

process . . . accords") (internal quotation marks omitted).  Mr. Curry was denied that opportunity when the court permitted him to proceed *pro se*.

First, though the adversarial process is "fundamental to our system of justice," *Rubin* v. *Gee*, 292 F.3d 396, 402 (4th Cir. 2002), Mr. Curry's trial was a non-adversarial proceeding.  As noted, Mr. Curry did not participate in jury selection, call any witnesses, make objections, cross-examine any witnesses, or offer any evidence.  (*See supra* at 27.)  Indeed, the district court questioned the Government's need to present certain testimony, asking if there was "some adversary here that I'm not seeing," recognizing that "you're getting in all sorts of stuff that you would not, in a contested hearing, get in," and counseling that "[o]ne of the nice things about not having an active opponent is that you don't have to put on the same case as you would if you had an active opponent."  (JA 279.)  When the district court read its proposed jury instructions, Mr. Curry gave the same response to each:  "I do not understand.  I'm the living beneficiary."  (JA 318-31.)  The court joked about Mr. Curry's lack of meaningful participation, commenting to the court reporter "I assume you have a macro," which is a "shortcut" command to insert the same text repeatedly—making light of the fact that Mr. Curry gave the same nonsensical response to each proposed instruction.  (JA 319.)  A proceeding where the defendant's participation can be captured by a "macro" is not adversarial.

-31-

Second, because Mr. Curry was not represented by counsel, the Government elicited significant privileged testimony from Mr. Curry's former lawyers. The district court's initial determination that the privilege applied to advice from Mr. Curry's lawyers was critical, *United States* v. *Curry*, Crim. No. WDQ-12-0163, 2013 U.S. Dist. LEXIS 39398, at *17-18 (D. Md. March 15, 2013) (unpublished), as "intent to defraud" is an element of the bankruptcy fraud crime with which Mr. Curry was charged. *See United States* v. *Wagner*, 382 F.3d 598, 612 (6th Cir. 2004) (citing 18 U.S.C. § 157(2) (2010)). However, the district court determined that it "sounds like" Mr. Curry had waived that privilege because, when asked whether he would assert it, Mr. Curry responded—as he had to practically every other question asked of him—that he did not understand, he was the living beneficiary, and that the "trustee" should address the questions. (JA 218.) Both of Mr. Curry's attorneys then testified that they had advised him that the law required him to disclose the very assets that the Government claimed he fraudulently failed to disclose, in violation of the bankruptcy laws. (JA 219, 283, 288.) This result undermines the importance of the attorney-client privilege, *see Upjohn* v. *United States*, 449 U.S. 383, 389 (1981) (describing the historical importance of attorney-client privilege), and fails to reflect the leniency that should be afforded to *pro se* litigants, *Rana* v. *United States*, 812 F.2d 887, 890 n.2 (4th

Cir. 1987) (noting that *pro se* litigants can be held to different waiver of claims standard).

Ultimately, the district court dealt in a summary way with Mr. Curry and his right to an adequate defense. The district court persisted in this even over the urging of the Assistant United States Attorney, who attempted to suggest to the court a path more protective of Mr. Curry's rights. The district court's failure to follow that path resulted in a fundamentally unfair trial that was offensive to Mr. Curry's due process rights. *Chambers* v. *Mississippi*, 410 U.S. 284, 302-03 (1973) ("quite simply [] under the facts and circumstances of this case the rulings of the trial court deprived [the defendant] of a fair trial").

## III.    THIS COURT SHOULD HEAR ORAL ARGUMENT.

Because this case presents the important and recurring question of whether a defendant who believes he is not subject to the jurisdiction of the United States courts can waive his right to counsel knowingly, intelligently, clearly and unequivocally, this Court should hear oral argument.

## CONCLUSION

For the foregoing reasons, the Court should vacate Mr. Curry's conviction and remand for a new trial.

Dated:     February 10, 2014

                     Respectfully submitted,

                      /s/ Lee Ann Anderson McCall

                     Lee Ann Anderson McCall (CJA Counsel)

                     Amanda F. Davidoff

                     Elizabeth A. Cassady

                     Jared P. Roscoe

                     James H. Congdon

                     SULLIVAN & CROMWELL LLP

                     1701 Pennsylvania Avenue, N.W.

                     Suite 800

                     Washington, D.C. 20006

                     Tel: 202-956-7500

                     mccalll@sullcrom.com

                     *Counsel for Defendant-Appellant*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**No.** 13-4514          **Caption:** United States of America v. Ricardo O. Curry, II

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   ☑ this brief contains _____8,362_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   ☐ this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   ☑ this brief has been prepared in a proportionally spaced typeface using Microsoft Word _____ [*identify word processing program*] in 14-pt, Times New Roman _____ [*identify font size and type style*]; **or**

   ☐ this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) Lee Ann Anderson McCall _____

Attorney for Ricardo O. Curry, II _____

Dated: 2/10/2014 _____

# CERTIFICATE OF SERVICE

I certify that on <u>2/10/14</u> the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Gregory Robert Bockin
David I. Sharfstein
Assistant U. S. Attorneys
OFFICE OF
THE UNITED STATES ATTORNEY
36 South Charles Street
Baltimore, MD 21201-0000

/S/ Lee Ann Anderson McCall
_____
Signature

2/10/14
_____
Date